[No. 38854.    Department One.    March 16, 1967.]

MARY FRANCES CALISTRO *et al., Appellants,* v. SPOKANE VALLEY IRRIGATION DISTRICT No. 10, *Respondent.*[*]

*Benjamin H. Kizer,* for appellants.

*Dellwo, Rudolf & Grant (Kermit M. Rudolf* and *William J. Grant,* of counsel), for respondent.

[*]Reported in 425 P.2d 3.

HUNTER, J.—This suit was brought seeking to obtain a judgment declaring an order of the Board of Directors of the defendant (respondent) Spokane Valley Irrigation District No. 10, which excluded the lands of the plaintiffs (appellants) from further water service, to be null and void.

Plaintiffs have appealed from the judgment of the trial court finding the proceedings of the district to be regular in all respects and dismissing the complaint.

Until 1966, Spokane Valley Irrigation District No. 10 served the area east of Spokane, known as the Spokane Valley. The water used by the district originated in the state of Idaho and was delivered by a gravity system through various canals, ditches and flumes from its point of origin to the westerly end of District No. 10 near the city limits of Spokane.

One portion of District No. 10 lies within the 4th class town of Millwood, Washington. It is in this part of District No. 10 where the plaintiffs reside. Over the years since the district was formed, this portion, which lies west of Pines Road and south of the Spokane River, has changed considerably in character, in that, the land is now used more or less for commercial, industrial and residential purposes. There are, however, still in the area many small acreage farmers, such as the plaintiffs, who need irrigation water.

In the early 1950's it became apparent that a new water system was needed. The cost of repair of the old system was constantly rising because of its deterioration and it became doubtful that the system would last through many more years. The demand for water, moreover, had decreased to a point where the system was only working at about 50 per cent capacity.

Beginning in 1952 discussions were held with the United States Bureau of Reclamation for the purpose of getting a new pressure system of irrigation built in the Spokane Valley to substitute for the ditch system.

To comply with federal requirements a Consolidated Irrigation District was formed in 1961 by the various districts

in the valley. The boundaries of the Consolidated Irrigation District did not include the lands of the plaintiffs in District No. 10. In 1964, the defendant, District No. 10, set in motion legal proceedings to reduce its boundaries by the exclusion of approximately one-third of its area around Millwood. This consisted of 1,860 irrigation tracts owned by between 1,350 and 1,400 landowners.

Pursuant to RCW 87.03.650, the attorney for the district drew up a petition for exclusion. It was circulated and 69 signatures to the petition were obtained. The petition asked that not only the lands of the signers but all other land for which similar grounds for exclusion existed, lying within the boundaries west of Pines Road and south of the Spokane River, be excluded and that following the exclusion, they no longer be assessed yearly for irrigation water or any other assessments for repair of the system or anything else; except, that they should pay off their pro rata share of bonded indebtedness existing at the time the petition was granted.

The petition was filed with the Board of Directors of District No. 10 and in compliance with RCW 87.03.655 a notice was published in the Spokane Valley Herald, a weekly newspaper in the valley, which set the date of March 3, 1964, as the public hearing date on which the petition would be considered by the board. No one appeared to contest the petition. The directors of the district passed the resolution granting the petition and approving the exclusion of the lands after finding that similar grounds for exclusion existed as to all the lands described in the petition. The directors also assessed the excluded lands $25.85 per acre as their share of the bonded indebtedness, as provided in the petition for exclusion, allowing $14 per acre credit for the 1964 regular assessment.

On March 31, 1964, the state of Washington, the bondholder of District No. 10, gave its conditioned consent to the exclusion of the Millwood area; the condition being that the landowners pay the pro rata remainder of bonded indebtedness levied by the district.

Thereafter, the landowners in the excluded area were informed by personal letter of the resolution and order of the board. Three of the affected landowners, the plaintiffs, objecting to the cessation of services and concerned over the payment of this special assessment, have prosecuted this appeal from an adverse judgment in the trial court.

The controlling issue in this case is raised by plaintiffs' contention that the Board of Directors for District No. 10 were without statutory authority to make the assessment and levy of March 3, 1964. They argue that the entire exclusion proceedings were of no effect since this per acre assessment for pro rata debt retirement was invalid. We agree with this contention of the plaintiffs. The trial court considered that at the time the Consolidated Irrigation District was formed the lands of the plaintiffs were not in it, and that by 1966 no one in District No. 10 would receive water from the old district. The trial court concluded, therefore, insofar as the plaintiffs were concerned, that the Spokane Valley Irrigation District No. 10 was for all practical purposes being dissolved by 1964, when they were being excluded, and the rest of the district by 1966. It related the assessment powers of the board in event of dissolution to those exercised in case of exclusion, and held that the excluded lands were subject to a pro rata assessment in satisfaction of their share of the bonded indebtedness. This was error.

The dissolution chapters of the Irrigation Code are unrelated to the statutes providing for exclusion of lands from an irrigation district. RCW 87.53.140 provides the following assessment powers at dissolution:

Assessments for unpaid obligations. Upon the dissolution of the district the *county commissioners* shall determine from the records the remaining bond and other indebtedness of the district, and shall determine the proper number of annual assessments, not over five, necessary to discharge the debt. They shall cause the county assessor to prepare the annual assessment roll, for the lands in the district, based upon the acreages shown on the last district assessment role. The commissioners shall

levy annual assessments, not exceeding five, upon all property in the district assessed for the bond fund on the district's last assessment roll and according to the ratios of benefits there shown, sufficient to pay any remaining claims, including bonds. They shall levy and equalize the assessments, after the same notice of hearing as are required of district directors on irrigation assessments. (Italics ours.)

The remaining statutes in this chapter relative to dissolution provide for an election by the landowners in the district passing on the question of dissolution (RCW 87.53.040); the sale of the district's assets (RCW 87.53.110); and the appointment of a trustee (RCW 87.53.100). The statutory assessment powers apply only to the county commissioners in event of dissolution and then only after an election and sale, a procedure not followed here.

The only authority by which this March 3rd assessment could be levied is under the general levy statute, RCW 87.03.260, which provides:

Levies, amount—Special funds—Failure to make levy, procedure. *The board of directors shall in each year before said roll is delivered by the secretary to the respective county treasurers, levy an assessment sufficient to raise the ensuing annual interest on the outstanding bonds, and all payments due or to become due in the ensuing year to the United States or the state of Washington* under any contract between the district and the United States or the state of Washington accompanying which bonds of the district have not been deposited with the United States or the state of Washington as in this act provided. Beginning in the year preceding the maturity of the first series of the bonds of any issue, the board must from year to year increase said assessment for the ensuing years in an amount sufficient to pay and discharge the outstanding bonds as they mature. Similar levy and assessment shall be made for the expense fund which shall include operation and maintenance costs for the ensuing year. The board shall also at the time of making the annual levy, estimate the amount of all probable delinquencies on said levy and shall thereupon levy a sufficient amount to cover the same and a further amount sufficient to cover any deficit that may have re-

sulted from delinquent assessments for any preceding year. (Italics ours.)

The assessment provided for by this section had already been levied by the board for 1964 on all property in the district at the rate of $14 per acre. As heretofore stated the excluded landowners were allowed to credit this amount against the $25.85 per acre assessment, leaving $11.85 per acre payable for 1964. There is no authority in RCW 87.03.260, *supra,* for this additional levy, and the statute is exhaustive. Neither is there any authority for the levy in the special assessment statutes. RCW 87.03.470 provides in part:

> Special assessments — Election — Coupon notes. The board of directors may, at any time when in their judgment it may be advisable, call a special election and submit to the qualified electors of the district the question whether or not a special assessment shall be levied for the purpose of raising money to be applied to any of the purposes provided in this chapter including any purpose for which the bonds of the district or the proceeds thereof might be lawfully used.

No election having been held pursuant to this section, there can be no authority for the March 3rd levy as a special assessment.

Accordingly, that portion of the levy which represents the pro rata share of the bonded indebtedness apportioned to the excluded lands ($11.85) was levied without statutory authority and is invalid.

■ The condition upon which the assent was given by the bondholder—the payment of this pro rata assessment by the excluded landowners—was not capable of performance and was therefore ineffective. The failure to obtain consent from the bondholder in an exclusion proceeding is fatal. RCW 87.03.670 provides in part:

> *but if such assent of the bondholders,* and in case of contract with the United States, or the state of Washington, such assent of the secretary of the interior, or the state reclamation board or the director of conservation

and development, *be not filed, the board shall deny and dismiss said petition.* (Italics ours.)

The condition for the assent having not been performed the assent was unavailing, and the board should have denied and dismissed the exclusion petition.

We need not consider the remaining contentions of the plaintiffs in view of our disposition of this case.

The judgment of the trial court is reversed, and the order and resolution of the Board of Directors, in which the plaintiffs' lands were excluded from Spokane Valley Irrigation District No. 10, is declared invalid.

OTT and HAMILTON, JJ., and JAMES, J. Pro Tem., concur.

HILL, J., concurs in the result.

July 14, 1967. Petition for rehearing denied.